UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

JORGE ARZUAGA,

Defendant.

Cr. No. 17 Cr. 313 (PKC)

## SENTENCING MEMORANDUM
## OF DEFENDANT JORGE LUIS ARZUAGA

Steven T. Cottreau
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001
(202) 879-3912

Abigael C. Bosch (*pro hac vice*)
JONES DAY
250 Vesey Street
New York, NY 10281-1047
(212) 326-3721

*Counsel for Jorge Arzuaga*

Dated:  November 9, 2020

## I. Introduction

Jorge L. Arzuaga, through counsel, submits this sentencing memorandum in advance of his sentencing, which is scheduled to take place by video on November 16, 2020, at 11:30 a.m.

Jorge is a fifty-nine-year-old male and citizen of Argentina. While working as a banker for Credit Suisse and then Bank Julius Baer, Jorge became the banker for an Argentine businessman (Alejandro Burzaco)—who was a childhood friend—and the soccer media companies that he ran. Jorge eventually learned that those companies were paying monies to officials of Federation Internationale de Football Association ("FIFA"), including through the financial accounts that Jorge oversaw.

Jorge offers neither excuse nor justification for his misconduct involving money laundering, to which he has admitted and pleaded guilty. Jorge presents himself to this Court for sentencing with sincere remorse, regret, and hope. He looks forward to closing this chapter of his life and focusing on the new, productive course of his life that he has been pursuing in recent years.

As noted below, Jorge's own healing and path to personal growth began before he knew whether the Government was aware of his misconduct. As a result of his misconduct, Jorge has spent more than a half a decade in the United States and pleaded guilty to his past misconduct.

Despite the loneliness, guilt, shame, and fear that has encumbered Jorge during his time alone in the United States, he has remained a loyal and devoted family member, a generous servant to his community, and an enthusiastic missioner at his church. Letters from Jorge's friends and family, attached to this submission as Exhibit C, reflect the power and authenticity of Jorge's unbounded compassion and the changes he has made in his life—importantly, while helping the lives of others in the process.

As a full-time volunteer at a New Orleans homeless shelter since December 2015—and the only Spanish-speaking volunteer—Jorge has prepared meals, cleaned bathrooms, painted the premises, started bicycle repair training program, and offered clothing and transportation to those in need. As a lay missioner at his church, Jorge has further committed himself to helping the poor and destitute in the many ways detailed below. And, as a Red Cross volunteer for disaster relief, Jorge has worked alongside first responders in aid to families who had been torn from their homes.

During this time, Jorge has been away from his family, who live in Argentina. As a long-distance father to three children, Jorge has tried to remain connected to his family, sharing their major life events over telephone calls and brief, infrequent visits, and encouraging them to volunteer in the community as he has. On disposition of this case, Jorge hopes to continue his good deeds and rebuild the relationships that his time away has tested. Having recently suffered a major health event in May 2020, Jorge is now especially eager to move on with his life and be able to spend time with his family. *See* ECF No. 25 (filed under seal); PSR Addendum.

Despite Jorge's wrongdoing, he has been a on a path of remorse and recompense since before he learned of the FIFA investigation. Since then, Jorge has spent years dedicating his life to bettering himself by serving others. Jorge has already pleaded guilty in Switzerland as a result of his wrongdoing, and Jorge has forfeited and tendered all monies he made from his misconduct. We ask that Your Honor sentence him to a probationary sentence of 36 months with no financial penalty and impose conditions that allow Jorge to serve his probation in Argentina.

## II. **Procedural Background**

On Wednesday, May 27, 2015, the Eastern District of New York ("EDNY") unsealed a forty-seven-count indictment of fourteen defendants for racketing, wire fraud, and money laundering conspiracies in connection with a decades-long scheme to enrich themselves through the corruption of international soccer (the "FIFA indictment"). Concurrently, Swiss authorities raided the Baur au Lac hotel in Zurich, Switzerland, arresting seven defendants.

As reflected in the Presentence Investigation Report ("PSR"), Jorge had just begun a month-long Christian pilgrimage in northern Spain when he learned of the FIFA indictment's unsealing. During the pilgrimage, Jorge had hoped to reconnect with his faith and to chart a new, moral course for his life.

On June 15, 2017, Jorge pleaded guilty to a one-count information with conspiracy to commit money laundering, in violation of Title 18 United States Code, Sections 1956(h) and 3551 et seq. *See* ECF No. 3.

Also on June 15, 2017, the Swiss Attorney General announced a settlement of charges against Jorge for his actions in Switzerland. In settling, Jorge admitted to charges of document forgery in connection with the same course of conduct charged here as part of the FIFA scheme. Jorge agreed to forfeit $1,046,000 in ill-gotten gains for his involvement in the scheme to the United States and Swiss governments. To date, Jorge has forfeited the full $1,046,000.[1]

Since pleading guilty in June 2017, Jorge has remained in the United States awaiting sentencing. Throughout these years, as evident in the letters of support from his community, Jorge has led an amazing life of redemption, immersing himself in the community to heal

---

[1] To satisfy his forfeiture agreement, Jorge has paid the U.S. government $451,600 from a Bank Julius Baer financial account (Switzerland), and $660,000 to the Swiss government from a UBP financial account (Switzerland).

4

himself and atone for his misconduct. Jorge has acted as an upstanding member of society. Jorge has passed the time away from his family by giving back to others. Jorge has committed no infractions of any kind. And Jorge has faithfully complied with all conditions of his release.

Jorge was unquestionably fortunate to remain on release when COVID-19 began rapidly spreading through prisons. Still, the global pandemic challenged Jorge to endure its ensuing isolation, uncertainty, and emotional strain while separated from his family abroad. Notwithstanding the pandemic, Jorge remained committed to helping the homeless at Rebuild Center. *See* Rebuild Center (Lantern Light) Newsletter, Ex. D. In addition, Jorge recently suffered a major health event that makes him more susceptible to negative health effects of COVID-19, and he is eager to see his family. *See* ECF No. 25 (filed under seal); PSR Addendum.

### III. Applicable Sentencing Standards

As this Court is well aware, the fundamental principle of sentencing is that a court "shall impose a sentence sufficient, but not greater than necessary" to meet specified sentencing goals, including the goal of just punishment. 18 U.S.C. §3553. Sections 3553(a)(1) and (2) direct the Court to consider in imposing a sentence, among things, the need "to afford adequate deterrence to criminal conduct"; the need "to protect the public from further crimes of the defendant"; "the history and characteristics of the defendant"; "[t]he kinds of sentences available"; and "[t]he need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

In considering the Section 3553(a) factors, sentencing courts should give no greater weight to the Guidelines calculation than any of the other factors. *See United States v. Kimbrough*, 128 S. Ct. 558, 570 (2007). Because "the Guidelines are guidelines—that is, they

are truly advisory," this Court is "generally free to impose sentences outside the recommended range." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc). "A sentencing judge has very wide latitude to decide the proper degree of punishment for an individual offender and a particular crime." *Id.* at 188; *see also United States v. Stewart*, 590 F.3d. 95, 143 (2d Cir. 2008) (explaining that "a sentence outside the Guidelines carries no presumption of unreasonableness" and the "Guidelines are only one of the factors to consider when imposing sentence").

We respectfully submit that sentencing Jorge to probation with no financial penalty would be sufficient, but not greater than necessary, to meet the goals of sentencing, for the reasons explained below and in Exhibit A attached hereto (filed under seal).

### IV. Dedication to Community Service

Since coming to the United States, Jorge has "found his purpose in life"—serving the needy. PSR ¶ 39; *see also id.* ¶¶ 73–75. Jorge's church family, neighbors, and volunteers are effusive in their description of Jorge's good heart and good deeds. *See* Ex. C. We also have submitted photos taken of Jorge performing these deeds; they mark not only his progress in giving back, but his progress in charting a new course for his life. *See* Ex. D.

Since settling in New Orleans, Louisiana, in December 2015, Jorge has spent his time volunteering on a full-time basis at Rebuild Center, a homeless center operated by St. Joseph's Church in New Orleans. As described by a fellow volunteer, the Center resembles "a self contained city," providing the residents with a place to take showers, use bathrooms, get medical care, and eat meals. Letter of Bernardine P. Dupre, Ex. C. At Rebuild Center, no task is too small for Jorge. Jorge cleans the bathrooms and living spaces, transports residents, and serves

6

food—sometimes as many as 400 meals a day. He cares for the church, painting the walls and varnishing the floors.

In early 2019, Jorge started a program that teaches homeless persons how to repair bicycles. Jorge, himself, travels New Orleans by bike—he is known in his community as the "kind one on the bicycle." Letter of Molly Fowler, ECF No. 23. The bike repair program's purpose is two-fold: it aims to provide the homeless with a vocational skill, and it teaches them how to ride a bicycle as a means of transportation. Importantly, it also "gives them a sense of pride and purpose." Letter of F. Beth Monahan, Ex. C.

In March 2016, Jorge was appointed a Vincentian Lay Missionary at St. Joseph's Church. Much like Jorge's personal mission, the group's worldwide mission is to seek out and service the poor. Letter of Bernardine Dupre, Ex. C. According to Bernardine Dupre, who also attends St. Joseph's Church and is a longtime Vincentian Lay Missioner, "The virtues that a missioner exhibits are Simplicity, Humility, Gentleness, Mortification and Zeal. Jorge has all of these virtues." *Id.* As a Vencentian Lay Missionary, Jorge has participated in missionary retreats to Little Rock, Arkansas, to work on rebuilding schools, and to Baton Rouge, Louisiana, to help with reconstruction after flooding in 2016. *See* Letters of Father Thomas Stehlik (priest in charge of St. Joseph's Church) and Kenitha Grooms-Williams (Director of Rebuild Center), Ex. C.

In addition to his work at Rebuild Center and St. Joseph's Church, Jorge also volunteers for the Red Cross in disaster relief efforts. After Hurricane Harvey hit Texas in August 2017, Jorge became a Red Cross volunteer for disaster relief. In October 2018, Jorge assisted the Red Cross in the aftermath of Hurricane Michael, living at a shelter in Florida—alongside the evacuees—for three weeks to help.

7

Through his volunteer work, Jorge has made many meaningful personal connections and has touched many people's lives. The numerous, heartfelt letters attached to this submission speak volumes about the affection and respect that Jorge has earned from his fellow volunteers and community in New Orleans. *See* Ex. C; *see also* Ex. D (photobook and Rebuild Center newsletter).

In one significant example, Jorge befriended one Rebuild Center resident who was originally from Honduras. Jorge assisted with the resident's medical bills—including several eye operations and dentist treatments—and helped him locate and reunite with his family in Honduras. Jorge recalls this personal victory as the moment he made peace in his heart with God.

By building these relationships, Jorge has remodeled his own life. Indeed, those who know Jorge from his volunteer work in New Orleans are surprised to learn of his background. *See* Letter of Bernardine P. Dupre, Ex. C. "Few people know that Jorge was once a banker." Letter of Molly Fowler, ECF No. 23. On discovering that the man preparing bread and desserts in Rebuild Center's kitchen was once a banker, someone might wonder why he "would be willing to take on this lowly task." Letter of Bernardine P. Dupre, Ex. C. But "Jorge does it because it feels like the right thing to do. He does it to give back." Letter of Molly Fowler, ECF No. 23.

Those who are aware of Jorge's past transgressions all have witnessed the changes in Jorge since he has dedicated himself to volunteer work in the United States. Jorge's wife, Waleska, states, "This experience has changed him to become a better person, to live an experience of serving and helping other human beings. . . . [I]t has raised a sense of giving and caring in him." Letter of Waleska Arzuaga, Ex. C. Jorge's twenty-seven-year-old son, Facundo,

8

notes that over the past five years, he "was able to see what a strong and extraordinary man [his] father is, how this case humbled him, and how he used his time in the United States to start making a difference in people's lives."  Letter of Facundo Arzuaga, Ex. C.  Seeing "how passionate" Jorge "has become about helping others since this case began" has even inspired Facundo to get more involved in his own community back in Argentina.  *Id.*  Jorge's twenty-year-old daughter, Eleonora, similarly writes, "In my heart, I know he has truly repented and has changed for good.  Anybody who knew him before and after this event knows that he is not the same person …."  Letter of Eleonora Arzuaga, Ex. C.

Even those who have encountered Jorge only since his relocation to the United States explain his humility and dedication to helping.  Elizabeth Ackal, a friend of Jorge's who created the photobook attached to this submission (*see* Ex. D), states, "Although Jorge does not talk about his 'past life', it does not come unnoticed that Jorge has experienced a huge transformation in his recent past."  Letter of Elizabeth Ackal, Ex. C.  Jorge "has inspired lots of people"—Ms. Ackal included—"who witness his daily efforts to help the needy, especially the Hispanic community."  *Id.*  According to Sandra L. Stokes, a friend of Jorge's who similarly serves their community, Jorge "now chooses work that fulfills his soul.  He has taken responsibility, learned, and not only turned his life around, but also uses his life to improve other's in the process."  Letter of Sandra L. Stokes, Ex. C.  As Jana D. Fogelman explains, "He is the brightest light to each and every person he encounters," and Jorge's "past transgressions have resulted in a priceless gift that is being paid forward, literally seven days a week."  Letters of Jana D. Fogelman, Ex. C.

Jorge's zealous and sincere commitment to community service is extraordinary and something Jorge is very proud of.

## V. Additional Sentencing Considerations Under 18. U.S.C. §3553(a)

The considerations under Section 3553(a) further support imposing on Jorge a probationary sentence with no financial penalty.

We believe that this Court should give great weight to the lawful, productive choices that Jorge has made in the past five years, summarized in detail above and in the attached letters from Jorge's family and friends, when considering the need for additional deterrence and to protect the public from Mr. Arzuaga. *See* Ex. C; *see also* Ex. D (photos). Jorge has lived a lawful, productive life for more than a half a decade. He has and will continue to pose no risk to the community. Instead, Jorge has reconnected with his faith, healed his ego, and dedicated his life to serving others.

Also, in considering the "the history and characteristics of the defendant" and "[t]he kinds of sentences available," the Court should consider the personal and financial burdens that Jorge has carried in addressing his past misconduct. Jorge has forfeited all of the monies he earned from the scheme—$1,046,000—in connection with his pleading guilty to U.S. and Swiss charges. As Jorge traveled to the United States in connection with this case, he quickly liquidated his personal property in Zurich at a loss.

Since then, Jorge has lived alone in the United States and has built a new life from scratch while devoting himself to helping those in need. As an immigrant with deferred status, Jorge has lived off his savings. He has made extreme efforts to minimize his personal expenses while providing as best he can for his wife, daughter, and two sons in Argentina. Jorge looks forward to continuing his dedication to community service and likely will never be able to work again in financial services. Jorge therefore faces the prospect of relying entirely on his retirement account.

## VI. Conclusion

Through his actions and community service over the past half-decade, Jorge has shown significant remorse for his involvement in the FIFA corruption scheme. He has admitted to and accepted responsibility for his past misconduct involving money laundering, which forms the basis of his guilty plea. In a sincere, concerted effort to remedy his poor choices, Jorge has dedicated the past five years of his life to doing the right thing. He has devoted his time to helping those in need, including the indigent in New Orleans and communities ravaged by natural disaster. And he has maintained loving and supportive relationships with his friends and family, even from afar. Jorge has demonstrated his resolve to leading a simple life and pursuing a lawful, productive path on disposition of this case. For each of these reasons, and for the reasons described above, Jorge respectfully submits that a non-Guidelines sentence of probation with no financial penalty, and with conditions that allow Jorge to serve his probation in Argentina, is sufficient, but not greater than necessary, to serve the goals of sentencing.

Dated: Brooklyn, New York
     November 9, 2020

Respectfully Submitted,

*/s/* Steven T. Cottreau
Steven T. Cottreau
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001
(202) 879-3912

Abigael C. Bosch (*pro hac vice*)
JONES DAY
250 Vesey Street
New York, NY 10281-1047
(212) 326-3721

*Counsel for Defendant Jorge Luis Arzuaga*